IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE CRÉDITO REAL S.A.B. DE C.V. SOFOM, E.N.R., | : : | Chapter 11 |
| | : | Bankr. No. 25-10208 (TMH) |
| Debtor in a Foreign Proceeding. | : : | |

---

| | | |
|---|---|---|
| UNITED STATES INTERNATIONAL DEVELOPMENT FINANCE CORPORATION, | : : : : | |
| Appellant, | : | Civ. No. 25-371 (CFC) |
| v. | : : | |
| CRÉDITO REAL S.A.B. DE C.V., SOFOM, E.N.R., *et al.,* | : : : | |
| Appellees. | : | |

---

Benjamin Butterfield, Theresa Foudy, Darren Smolarski, MORRISON & FOERSTER LLP, New York, New York; Kevin M. Capuzzi, John C. Gentile, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Wilmington, Delaware,

    *Counsel for Appellant*

John K. Cunningham, Richard S. Kebrdle, Claire M. Campbell, WHITE & CASE LLP, New York, New York; Jason N. Zakia, WHITE & CASE LLP, Chicago, IL; Mark D. Collins, John H. Knight, Amanda Steele, RICHARDS LAYTON & FINGER P.A., Wilmington, Delaware,

    *Counsel for Appellees*

**<u>OPINION</u>**

March 31, 2026
Wilmington, Delaware

_____
CHIEF JUDGE

## I.    INTRODUCTION

On February 7, 2025, Crédito Real, S.A.B. de C.V., SOFOM, E.N.R. (the "Chapter 15 Debtor"), a Mexican company, through its Foreign Representative, filed a Chapter 15 petition (A.1-72)[1] seeking, *inter alia*, (1) recognition of its insolvency proceeding (the "Concurso Proceeding") as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code; and (2) an order rendering assistance to the Mexican court, pursuant to sections 1521(a)(7) and 1507 of the Bankruptcy Code, by recognizing and enforcing the Chapter 15 Debtor's plan (the "Concurso Plan"), which had been approved by the Mexican court overseeing the Concurso Proceeding, and which contained a provision releasing certain direct claims (including, for fraud and other intentional wrongdoing) held by third parties against certain non-debtors—a provision often referred to as a nonconsensual third-party release.

Appellant, United States International Development Finance Corporation ("DFC"), an agency of the United States of America and claimant in the Concurso

_____

[1] The docket of the Chapter 15 case, captioned *In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, No. 25-10208 (TMH) (Bankr. D. Del.) is cited herein as "Bankr. D.I. __." The appendix (D.I. 22) filed in support of DFC's opening brief (D.I. 21) is cited herein as "A.__," and the supplemental appendix (D.I. 25) filed in support of the answering brief of the Chapter 15 Debtor and the Foreign Representative (D.I. 24), is cited herein as "SA.__." The Technical Committee of the Irrevocable Trust of Administration and Source of Payment (the "Technical Committee"), also filed an answering brief. *See* D.I. 23, 29.

Proceeding, objected to the entry of an order granting full force and effect to the Concurso Plan based on the nonconsensual third-party release it contained. Relying on the Supreme Court's decision, *Harrington v. Purdue Pharma LP*, 603 U.S. 204 (2024), DFC argued that the Bankruptcy Court lacked statutory authority to approve such a release under Chapter 15 and that the release was "manifestly contrary to the public policy" of the U.S. within the meaning of § 1506 of the Bankruptcy Code.

On March 11, 2025, the Bankruptcy Court issued its *Order Granting (I) Recognition of Foreign Main Proceeding, (II) Full Force and Effect to Concurso Plan and Certain Related Relief* (Bankr. D.I. 51) (the "Enforcement Order"), overruling DFC's objection for the reasons set forth in its thorough opinion, *In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150 (Bankr. D. Del. 2025).

On March 25, 2025, DFC filed a timely notice of appeal. D.I. 1. The appeal is fully briefed. D.I. 21, 23, 24, 26. I did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, I will affirm the Enforcement Order.

## II.    BACKGROUND

### A.    The Chapter 15 Debtor and the RSA

The factual background of this case is set forth in detail in the Opinion and appears undisputed. *See Crédito Real*, 670 B.R. at 156-60. The Chapter 15 Debtor

2

was one of Mexico's largest non-bank financial lending institutions, with customers located predominantly in Mexico, elsewhere in Latin America, and in the United States. *Id.* at 156. In 2021, amid a liquidity crisis, the Chapter 15 Debtor began discussions with its key creditors on a restructuring. *Id.* These negotiations failed, and in June 2022, a shareholder of the Chapter 15 Debtor initiated a corporate liquidation proceeding in the 52nd Civil State Court of Mexico City, Mexico (the "Mexican Liquidation Proceeding"). (A.19-20.) Around the same time, certain members of an ad hoc group of unsecured creditors (the "Ad Hoc Group") filed an involuntary Chapter 11 petition in the Southern District of New York against the Chapter 15 Debtor (the "Involuntary Chapter 11 Case").[2] (A.19.) A related Chapter 15 case in support of the Mexican Liquidation Proceeding (the "Prior Chapter 15 Case")[3] was filed before the Bankruptcy Court. (A.19-20.)

Following years of litigation and months of negotiations, the Chapter 15 Debtor, the Ad Hoc Group, and other stakeholders reached an agreement and entered into a restructuring support agreement (the "RSA") to implement a global restructuring of the Chapter 15 Debtor's assets and liabilities. (A.23.) The RSA resolved several complex issues unique to the Chapter 15 Debtor's restructuring, including the Mexican

---

[2] *See In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,* No. 22-10696 (TMH) (Bankr. D. Del. 2022).
[3] *See In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,* No. 22-10630 (TMH) (Bankr. D. Del. 2022).

Liquidation Proceeding, the Involuntary Chapter 11 Case, and the Prior Chapter 15 Case. (A.23.) The RSA provided that (i) the Chapter 15 Debtor and Ad Hoc Group would work to obtain the support of the majority of unsecured creditors and (ii) upon obtaining requisite support, the Debtor would commence a pre-packaged reorganization proceeding under *Ley de Concursos Mercantiles* ("Mexican Bankruptcy Law") in connection with an agreed Concurso Plan. (*Id.*) The RSA provided that the Debtor and Foreign Representative ultimately seek recognition and enforcement of the Concurso Plan in the U.S. under Chapter 15. (A.867-68.) It further provided that the Concurso Plan contain "customary releases and exculpation provisions," including of the Ad Hoc Group and certain of the Debtor's advisors, representatives, and stakeholders, in accordance with Mexican law. (A.868, A.915.)

On May 21, 2023, the Foreign Representative filed a status report in the Prior Chapter 15 Case and Involuntary Chapter 11 Case, notifying the Bankruptcy Court and parties in interest (including DFC) of the consensual resolution and global restructuring agreed under the RSA. (A.15.)

### B.    The Concurso Proceeding

In accordance with the RSA, on October 6, 2023, the Debtor filed the voluntary Concurso Proceeding in the 52nd Civil State Court of Mexico City (the "Mexican Court"). (A.24, A.32, A.91-92.) Under Mexican Bankruptcy Law, the Concurso Proceeding was subject to comprehensive creditor protections, including: (i)

4

appointment of an independent examiner; (ii) a formal claims reconciliation process with objection rights; (iii) personal notification to all known creditors; (iv) public access to all proceedings and documents; (v) required creditor vote with 50% approval threshold; and oversight by Mexico's IFECOM (Federal Institute of Insolvency Specialists). (*See* A.77-A.89.)

The Mexican Court-appointed *conciliator* submitted the Concurso Plan to creditors on May 21, 2024 and later to the Mexican Court for approval. (A.24, A.94.) In accordance with the RSA, the Concurso Plan includes a release of claims against several parties that applies equally to all third-party creditors (the "Release"). (A.95, A.728, A.735.) The Release is customary in Mexican settlement agreements, such as the Concurso Plan, and is permitted under Mexican Bankruptcy Law. (SA.1110.) The Release provides:

> In any event, [the Chapter 15 Debtor] and the Recognized Creditors agree not to bring any action, complaint, suit or claim, as the case may be, against the Participating Recognized Creditors nor [the Chapter 15 Debtor], respectively, as well as their shareholders, its former general manager Felipe Guelfi Regules, liquidator, directors, officers, secretaries, depositaries and officers, and The Bank of New Mellon, as trustee for [the Chapter 15 Debtor]'s foreign-denominated bonds denominated in U.S. dollars, legal tender in the United States of America, and euros, legal tender in the European Union as the case may be, for any act or omission incurred by them during the Bankruptcy Proceeding and at any time prior to the execution of this Agreement, except for actions, complaints, claims or demands, as the case may be, for acts or omissions of [the Chapter 15 Debtor] that have caused damage or impairment

to the Bankruptcy Estate and that they have failed to declare or disclose to the Participating Recognized Creditors during the negotiations of this Settlement Agreement and up to the date of its execution.

(A.728.)

The Concurso Plan provides for the repayment of creditors who are located in the U.S. *Crédito Real*, 670 B.R. at 158. It establishes the creation of a special purpose vehicle through a Mexican trust, to which almost all the Chapter 15 Debtor's remaining assets will be transferred. *Id.* Upon the monetization, sale, or assignment of such assets, the proceeds will be distributed according to the priority scheme set forth in the Mexican Bankruptcy Law, *pari passu* and *pro rata* among unsecured creditors, and unsecured claims will be cancelled or extinguished. *Id.*

The Concurso Plan was approved by the requisite majority of creditors and was confirmed by the Mexican Court upon entry of the Concurso Order. (A.94.) The Concurso Order reflects the Mexican Court's determination that the Concurso Plan complied with Mexican law, including "the requisites of opportunity, validity, legal basis, and form," and its holding that "neither the public interest nor the individual interest of any specific creditor is violated, since the terms agreed to will apply to all creditors equally . . . ." (A.735.)

## C.    DFC's Participation in the Concurso Proceeding

DFC participated in the Concurso Proceeding, including by filing a proof of claim and appealing the Mexican Court's ruling of its status as an unsecured creditor.

6

(SA.1112.) DFC also objected to approval of the Concurso Plan on grounds unrelated to the Release. (*Id.*) The Mexican Court overruled DFC's objections to the Concurso Plan. (A.737, SA.1113.) On November 21, 2024, DFC appealed the Concurso Order, raising for the first time its argument that the Release violates Mexican Bankruptcy Law. (SA.1113.) The Chapter 15 Debtor and the Ad Hoc Group each filed a reply to DFC's appeal, defending the propriety of the Release. (SA.1114.) If DFC loses the appeal, it may still challenge, pursue other remedies and/or further appeal to the federal courts in Mexico. (*Id.*)

## D.    The Chapter 15 Case

On February 7, 2025, the Foreign Representative filed its petition seeking recognition of the Concurso Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code and granting full force and effect within the U.S. to the Concurso Plan and the Concurso Order. (A.1-A.73.) DFC did not contest that the Concurso Proceeding satisfied the requirements for recognition under section 1517(a) as a "foreign main proceeding." (A.963, A.1051.) Upon such recognition, the Bankruptcy Code provides that the Bankruptcy Court "shall grant comity or cooperation to the [F]oreign [R]epresentative." 11 U.S.C. § 1509(b)(3) (directing a court to grant comity if it has granted recognition under section 1517 and subject to any limitations consistent with the policy of Chapter 15).

7

On February 28, 2025, DFC filed a limited objection to enforcement of the Concurso Plan and Concurso Order, arguing that the Release violated U.S. public policy following the Supreme Court's ruling in *Purdue*. (A.933-38.) DFC did not challenge the fairness or adequacy of the Concurso Proceeding, nor any other aspect of the Concurso Plan. (A.985.)

### E.    The Bankruptcy Court's Decision

Following briefing and oral argument held on March 11, 2025, the Bankruptcy Judge issued a bench ruling recognizing the Concurso Proceeding as the foreign main proceeding under Chapter 15, overruling DFC's objections, and granting recognition and enforcement of the Concurso Plan and Concurso Order. (A.1051-53.) On March 11, 2025, the Bankruptcy Court entered the Enforcement Order. (A.941.) On March 25, 2025, DFC filed its notice of appeal. (A.1055-59.)

On April 1, 2025, the Bankruptcy Judge issued his Opinion in support of the Enforcement Order. The Bankruptcy Judge addressed each of DFC's arguments, finding that Chapter 15's broad grant of authority permits enforcement of foreign court orders containing nonconsensual third-party releases. *Crédito Real*, 670 B.R. at 168-71. The court found *Purdue* to be inapplicable because the Supreme Court limited its decision to Chapter 11's specific provisions, which have no bearing on Chapter 15's separate framework for international comity and cooperation with foreign courts in foreign insolvency proceedings. *See id.* The Bankruptcy Court emphasized the

8

procedural and fundamental fairness of the Concurso Proceeding and determined that creditor interests were sufficiently protected under section 1522 of the Bankruptcy Code. *See id.* at 172. Finally, the Bankruptcy Court determined that the Release was not "manifestly contrary" to U.S. public policy, emphasizing the narrow construction of this exception and the availability of nonconsensual third-party releases in section 524(g) of the Bankruptcy Code. *See id.* at 171-72.

## III.    JURISDICTION AND APPLICABLE STANDARDS

The Enforcement Order is a final order. *See In re ABC Learning Centres Ltd.*, 728 F.3d 301 (3d Cir. 2013) (reviewing district court order affirming bankruptcy court order granting recognition as a foreign main proceeding). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

In undertaking a review of the issues on appeal, a district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to its legal conclusions. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The bankruptcy court's discretionary rulings, including those regarding comity, are reviewed for abuse of discretion. *See, e.g., In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011); *Remington Rand Corp.-Del. v. Bus. Sys., Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987).

An abuse of discretion occurs when the court fails to apply the proper legal standard, fails to follow proper procedures in rendering the decision, or bases a

9

decision upon findings of fact that are clearly erroneous. *Zolfo, Cooper & Co. v. Sunbeam- Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). "Clear error exists only if a finding is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005). A court abuses its discretion where its decision was "arbitrary, fanciful or clearly unreasonable." *Democratic Nat'l Committee v. Republican National Comm.*, 673 F.3d 192, 201 (3d. Cir. 2012).

## IV. ANALYSIS

Upon recognition of a foreign main proceeding, the Bankruptcy Court exercises broad discretion to grant enforcement of orders entered in the foreign main proceeding, consistent with the guiding principles of comity. *See* 11 U.S.C. § 1501. Section 1521(a) authorizes the court to grant "any appropriate relief" necessary to effectuate the purposes of Chapter 15, and section 1507 independently authorizes "additional assistance," subject to specifically enumerated prohibitions, which do not include third-party releases. 11 U.S.C. §§ 1507(a), 1521(a). Section 1507(b)'s balancing test directs courts to consider the interests of creditors, the protection of assets, the treatment of stakeholders, and whether relief would be "consistent with the principles of comity." 11 U.S.C. § 1507(b). Here, the Bankruptcy Court determined that enforcement of the Concurso Plan (including the Release) was proper under the

10

broad authority granted by sections 1521(a) and 1507 of the Bankruptcy Code. *See Crédito Real,* 670 B.R. at 168-71.

DFC argues that the Bankruptcy Court erred in holding that it had the power to enforce a nonconsensual third-party release under Chapter 15. According to DFC, sections 1521(a)(7) and 1507(a) are "catch-all" provisions, and the Bankruptcy Court should have interpreted them in the same way that the *Purdue* court interpreted § 1123(b)(6). In DFC's view, "[t]he Supreme Court's decision last year in *Purdue* provides a roadmap for interpreting broad, catch-all statutory language in the Bankruptcy Code, including the provisions of chapter 15 on which the Bankruptcy Court relied." *See* D.I. 21 at 22-37. DFC further argues that the court abused its discretion in enforcing the Concurso Plan as the Release is "manifestly contrary to the public policy" of the U.S. within the meaning of section 1506 of the Bankruptcy Code. *See id.* at 37-39.

A.    **Statutory Background**

Chapter 15 includes a policy statement that confirms its "[p]urpose" and "objectives" and sets it apart from other chapters of the Bankruptcy Code. 11 U.S.C. § 1501(a). Chapter 15 incorporates the Model Law on Cross-Border Insolvency to promote: (i) cooperation between U.S. and foreign courts in cross-border insolvency cases; (ii) greater legal certainty for trade and investment; (iii) a fair and efficient administration of cross-border insolvencies that protects the interests of all

11

stakeholders, including the debtor; (iv) the protection and maximization of the value of the debtor's assets; and (v) the facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment. *Id.*

As Appellees point out, these objectives demonstrate Congress's intent for courts to interpret Chapter 15's provisions broadly to accommodate various legal systems and restructuring mechanisms. *See, e.g., In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("[C]hapter 15 maintains—and in some respects enhances—the 'maximum flexibility,' that section 304 [which previously governed cases ancillary to foreign proceedings] provided bankruptcy courts . . . in light of principles of international comity and respect for the laws and judgments of other nations."). Section 1508 directs that courts interpreting Chapter 15 "shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. "Particularly in the bankruptcy context, 'American courts have long recognized the need to extend comity to foreign bankruptcy proceedings,' because '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in single proceeding; if all creditors could not be bound, a plan of reorganization would fail.'" *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1985)).

12

Once a case is recognized as a foreign main proceeding, "Chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *Id.* at 738; 11 U.S.C. § 1521; *see also* 11 U.S.C. § 1509(b)(3) ("[A] court in the United States shall grant comity or cooperation to the foreign representative").  The importance of comity is expressed again in section 1507(b), which instructs that the provision of "additional relief" be "consistent with the principles of comity . . ." 11 U.S.C. § 1507(b).  The limitation on the court's broad discretion under Chapter 15 is set forth in section 1506, which provides that a court may decline to grant relief that is "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

### B.    The Bankruptcy Court Did Not Err in Declining to Apply *Purdue's* Construction of Section 1123(b)(6)

As an initial matter, DFC's overarching argument in this appeal is that the Bankruptcy Court should have interpreted sections 1521(a)(7) and 1507 in the same way that the *Purdue* court interpreted section 1123(b)(6) in the context of a Chapter 11 plan.  But as the Bankruptcy Court held, "[n]either the plain language nor canons of statutory interpretation support DFC's arguments." *Crédito Real,* 670 B.R. at 165.

*Purdue* is, by the Supreme Court's express language, not applicable to this case as it addressed a statutory interpretation question applicable only to Chapter 11: "the Court holds *only* that the bankruptcy code does not authorize a [nonconsensual] release

13

[of third-party claims against non-debtors] as part of a plan of reorganization under *Chapter 11* . . . ." 603 U.S. at 206–07 (emphasis added).

DFC's assertion that *Purdue* "provides a roadmap" to interpret provisions in Chapter 15 fails to account for the fundamental structural and functional differences between Chapter 11 and Chapter 15. The catch-all provisions in Chapter 15 are part of a recognition and enforcement framework, drafted specifically to empower courts to assist foreign proceedings where appropriate. In *Purdue*, the Supreme Court addressed the narrow question of whether section 1123(b)(6) of the Bankruptcy Code, which permits a Chapter 11 plan to "include any other appropriate provision not inconsistent with the applicable provisions of this title," authorized the inclusion of nonconsensual third-party releases. *See Purdue,* 603 U.S. at 214–19. *Purdue's* analysis turned on the principle of *ejusdem generis* and concluded that section 1123(b)(6) must be read in the context of its neighboring provisions, all of which concerned the debtor and its direct obligations. *Id.* at 217–19. The Supreme Court emphasized that this "catchall" provision was inherently constrained, meant only to clarify that Chapter 11 plans may include appropriate provisions that do not conflict with other Bankruptcy Code provisions, and that it did not empower courts to create new remedies or override other statutory limits. *Id.* at 218–21.

DCF has not pointed to anything in the text of Chapter 15 that is comparable to section 1123(b)(6)'s requirement that plan provisions not be "inconsistent with the

applicable provisions of this title." That omission is telling. Courts do not presume that Congress inserts limiting clauses into one chapter and forgets to include them in another, particularly when those chapters serve different purposes. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Had Congress intended to condition Chapter 15 relief on the rules of Chapter 11, it would have so stated.

The omission of a limiting phrase implies a deliberate structural choice. Congress designed Chapter 15 to allow courts to flexibly assist foreign proceedings in ways tailored to their specific legal and factual contexts, not to replicate the exact structure of Chapter 11. Thus, the Bankruptcy Court did not err in rejecting the effort to conflate these frameworks and holding that *Purdue* has no bearing on whether the Release may be recognized in a Chapter 15 case. *Crédito Real,* 670 B.R. at 164.

### C.    The Bankruptcy Court Did Not Err in Enforcing the Concurso Plan

The Bankruptcy Court further determined that enforcement of the Concurso Plan (including the Release) and Concurso Order was authorized under both sections 1521(a) and 1507. *See id.* at 169, 171.

15

### 1.     Enforcement Is Authorized by Section 1521(a)

Section 1521(a) of the Bankruptcy Code authorizes the Bankruptcy Court to "grant any appropriate relief," provided that the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521(a), 1522. "The discretion that is granted [under section 1521(a)] is 'exceedingly broad' since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors." *In re Odebrecht Engenharia e Construção S.A.*, 669 B.R. 457, 465 (Bankr. S.D.N.Y. 2025) (quoting *In re Atlas Shipping*, 404 B.R. at 739). Such inquiry focuses on, among other things, whether there is a "full and fair trial . . . before a court of competent jurisdiction [that was] conduct[ed] upon regular proceedings . . . and under a system of jurisprudence likely to secure an impartial administration of justice . . . and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting." *Hilton v. Guyot,* 159 U.S. 113, 202-03 (1895); *see also In re Avanti Commc'ns. Grp. PLC*, 582 B.R. 603, 616 (Bankr. S.D.N.Y. 2018).

DFC argues that section 1521(a) does not authorize third-party releases because they are "not specifically enumerated" and it says the Bankruptcy Court's reliance on section 1521(a)(7) was misplaced. D.I. 21 at 21. But section 1521(a) allows the court to grant "any appropriate relief" to a Chapter 15 debtor in order to preserve the value of the debtor's assets and facilitate the administration of the foreign proceeding. As

16

the Bankruptcy Court found, this provision explicitly grants broad judicial discretion, including the ability to enforce the terms of a foreign restructuring plan. *See Crédito Real*, 670 B.R. at 161-62.

DFC also misreads section 1521(a)(7), which authorizes courts to grant "any additional relief that may be available to a trustee," subject only to specific exclusions not applicable here.[4] DFC argues that because nonconsensual third-party releases are no longer available in domestic Chapter 11 cases post-*Purdue*, such relief must also be barred under Chapter 15. *See* D.I. 21 at 24-27; D.I. 26 at 6-7. But as courts have recognized, the term "trustee" in section 1521(a)(7) refers not to the identity of the actor, but to the nature of the relief available in U.S. bankruptcy proceedings. *See In re Irish Bank Resol. Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 642–43 (Bankr. D. Del. 2016). Section 1521(a)(7) merely expands the court's authority to include forms of relief typical in domestic cases, so long as they are "appropriate" in the Chapter 15 context. It does not impose a requirement that the relief be presently available under Chapter 11, nor does it prohibit foreign representatives from seeking such relief.

DFC's focus on the unavailability of third-party releases under Chapter 11 also ignores the broader language of section 1521(a), which expressly permits "any

_____

[4] Section 1521(a)(7) states that the relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) is not available to the foreign representative. These sections are not applicable here.

17

appropriate relief" necessary to effectuate the objectives of Chapter 15. When read together, sections 1521(a) and 1521(a)(7) grant courts broad discretion to approve relief that protects debtor assets and creditor interests, unless explicitly excluded, and third-party releases are not among those exclusions.

DFC further argues that the Bankruptcy Court ignored section 1522(a)'s requirement that discretionary relief under section 1521 may be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). But the Opinion considered the procedural and fundamental fairness of the Concurso Proceeding, including the notice and opportunity to be heard afforded to creditors (including DFC), and the arms-length nature of the negotiations leading to the Concurso Plan, concluding that creditor interests were sufficiently protected. *See Crédito Real,* 670 B.R. at 156-58 (outlining Concurso Proceeding) and 169 (finding that it "provided all the protections set out in Section 1507(b)").

In sum, by authorizing "any appropriate relief," section 1521 empowers courts to facilitate outcomes in foreign proceedings that promote fairness, comity, and the efficient resolution of cross-border insolvencies. The Bankruptcy Court's decision that the Release could be enforced under section 1521(a) is supported by the text and purpose of Chapter 15.

## 2.    Enforcement Is Authorized by Section 1507

Section 1507(a) states that "if recognition is granted, [the court] may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a). DFC argues the Bankruptcy Court erred because, "[u]nder *Purdue*, non-consensual third-party releases are not available under the Bankruptcy Code or other laws of the United States." D.I. 21 at 33. Section 1507(a), however, reflects Congress's intent to grant bankruptcy courts broad discretion to recognize and assist foreign proceedings, even when the relief exceeds what is typically available under Chapter 11, so long as basic principles of comity, fairness, and U.S. public policy are respected. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (explaining that enforcement of relief in a foreign plan does not require identical relief to be available in the U.S.); *see also In re OAS, S.A.*, 533. B.R. 83, 104 (Bankr. S.D.N.Y. 2015) (quotations omitted) (indicating that "even the absence of certain procedural or constitutional rights will not itself be a bar"). By using the permissive phrase "may provide additional assistance," section 1507(a) signals Congress's intent to accommodate the unique demands of cross-border restructurings, rather than constrain them within the narrower confines of purely domestic provisions.

In determining whether to grant such additional assistance, section 1507(b) instructs courts to be consistent with the principles of comity and to consider: whether

19

there has been fair process in the foreign proceedings; if claim holders are receiving due process; whether there is any preferential or fraudulent transfer at issue; if the distribution substantially aligns with the Bankruptcy Code's order of priorities; and whether, in appropriate cases, individuals can receive a "fresh start." 11 U.S.C. § 1507(b). Courts have interpreted this inquiry to focus on whether there is a "full and fair trial . . . before a court of competent jurisdiction [] [that was] conduct[ed] . . . under a system of jurisprudence likely to secure an impartial administration of justice . . . and there is nothing to show either prejudice in the court, or in the system of laws under which it [presides]." *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 616 (Bankr. S.D.N.Y 2018) (quoting *Hilton*, 159 U.S. at 202–03).

The Bankruptcy Court did not clearly err in finding that the Concurso Proceeding included these hallmarks of procedural fairness and did not violate section 1507(b). *Crédito Real,* 670 B.R. at 169. The Bankruptcy Court carefully reviewed the record and found that the Concurso Proceeding provided DFC and other creditors with notice, an opportunity to be heard, and meaningful judicial review. *See id.* The process was court-supervised, publicly noticed, and included rights of appeal that DFC has in fact exercised. The Mexican Court only approved the Release in a collective proceeding after notice and a hearing. The Release was the result of negotiations among Crédito Real and its creditors in the Concurso Proceeding and was approved by

20

the Mexican Court after a hearing set on five-business-days' notice to all parties in interest to present their objections and opportunity to appeal the Concurso Order.

DFC argues that this application of comity is optional, claiming that "a bankruptcy court can fully satisfy its statutory duty of comity without providing any discretionary relief requested under Sections 1507 or 1521." D.I. 21 at 35. But while courts are not obligated to grant every request made by a foreign representative, they are required to weigh whether recognition and enforcement of foreign relief advances the cooperative and efficiency-based goals of Chapter 15. Comity is a guiding statutory principle. *See In re ABC Learning,* 728 F.3d at 308 (explaining that Chapter 15 was enacted to provide effective mechanisms for dealing with cases of cross-border insolvency, emphasizing cooperation between U.S. courts and foreign courts, and fostering comity and predictability in international insolvency proceedings). Accepting DFC's argument and refusing to recognize customary foreign restructuring tools like the Release, absent any fundamental conflict with U.S. policy, would frustrate the statutory purpose of Chapter 15 and render section 1507 meaningless.

Thus, the Bankruptcy Court did not err in holding that section 1507(a) authorizes enforcement of third-party releases where the relief aligns with the principles of comity, fairness, and U.S. public policy. Nor did it abuse its discretion in extending comity to the Mexican Court's judgment, which it found to be the product of

21

a procedurally sound, transparent, and equitable restructuring process. DFC has provided no basis to determine that finding was clearly erroneous.

### D. The Bankruptcy Court Did Not Err in Determining that the Release Is Not Manifestly Contrary to the Public Policy of the United States

To ensure that Chapter 15 is not used to grant relief beyond appropriate bounds, Congress included a safeguard in section 1506 which provides that the court may "refus[e] to take an action governed by [Chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Section 1506's public policy exception provides a narrow remedy for genuine threats to core U.S. constitutional or statutory rights, as opposed to mere discrepancies between domestic and foreign law. The public policy exception applies only when actions offend "the most fundamental policies of the United States" and is "invoked only 'under exceptional circumstances concerning matters of fundamental importance for the [United States].'" *Morning Mist. Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013) (quoting H.R. Rep. No. 109-31, pt. 1, at 109 (2005)); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 570 (E.D. Va. 2010) ("The mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception."); *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 890–91 (Bankr. S.D.N.Y. 2021) (stressing public policy exception, employing term "manifestly," must be read narrowly and concluding nonconsensual third-party releases did not fall within exception).

22

The Bankruptcy Court did not err in finding that the Release did not meet that high bar. As noted, the relief granted in a foreign proceeding does not need to be identical to what might be available in the U.S., and courts in this circuit have held that the public policy exception of section 1506 only applies "'where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections' or where recognition 'would impinge severely a US constitutional or statutory right.'" *In re ABC Learning*, 728 F.3d at 309 (quoting *In re Qimonda AG*, 433 B.R. at 570). DFC insists that the Release violates public policy, arguing that "[t]he public policy of the United States strongly disfavors the release of liability in cases involving intentional wrongdoing, fraud, bad faith, and similar serious misconduct," and citing *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) in support. *See* D.I. 21 at 38. But *Metromedia,* which involved a Chapter 11 case, is inapplicable in this Chapter 15 case, where there have been no findings of wrongdoing, fraud, bad faith, or serious misconduct in the case by the Mexican Court. The Bankruptcy Court did not abuse its discretion in granting comity to the Mexican Court in this respect.

Moreover, as Appellees points out, *Purdue* did not establish that nonconsensual third-party releases violate U.S. public policy. The Supreme Court's analysis focused on statutory interpretation under provisions of Chapter 11, rather than public policy considerations, and it held that although nonconsensual third-party releases are not

23

permitted under Chapter 11—except under section 524(g) in the context of asbestos cases—Congress may authorize them. *See Purdue*, 603 U.S. at 226. The Supreme Court's acknowledgment of the policy arguments supporting such releases undermines DFC's claim they are manifestly contrary to fundamental U.S. policy.

## V.    CONCLUSION

It is well settled that U.S. bankruptcy courts can give effect to foreign orders in recognized foreign proceedings pursuant to the authority granted in Chapter 15, even when those orders contain relief unavailable under U.S. law. DFC's arguments misconstrue the Supreme Court's narrow holding in *Purdue*, applicable in Chapter 11 cases, as well as the statutory framework of Chapter 15 and its core policy objectives. Accordingly, I will affirm the Enforcement Order.

The Court will issue a separate Order consistent with this Opinion.